UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

BROOKE T. MARTIN                                                                                        PLAINTIFF

v.                                                                              CIVIL ACTION NO. 3:15cv675-DPJ-FKB

SHELTER MUTUAL INSURANCE COMPANY                                               DEFENDANT

ORDER

This diversity action is before the Court on the following motions: (1) Defendant Shelter Mutual Insurance Company's ("Shelter") Partial Motion to Dismiss [7]; (2) Plaintiff Brooke Martin's Motion for Partial Summary Judgment [20]; and (3) Defendant Shelter's Motion for Leave to File Surrebuttal [39] to Plaintiff's Reply in support of her Motion for Partial Summary Judgment. For the reasons that follow, Shelter's Partial Motion to Dismiss [7] is granted in part, its Motion for Leave to File Surrebuttal [39] is granted, and Martin's Motion for Partial Summary Judgment [20] is denied.

I.      Background and Procedural History

This case arises out of a homeowner's insurance claim made by Plaintiff Brooke Martin after she discovered water damage in her home in June 2015. Martin purchased her home and the insurance policy at issue in this dispute in May 2011. Compl. [1-1] ¶ 5.[1]  In June 2015, after hiring a contractor to renovate her kitchen, Martin discovered water escaping from the pipes beneath the kitchen sink. *Id.* ¶¶ 8–11; Martin Aff. [20-4] ¶ 4. After repairing the pipe, the

---

[1] Citations are made to both the Complaint and the record because this Order addresses both a motion to dismiss under Rule 12(b)(6) and a motion for summary judgment under Rule 56. As to the former, the Court limited its consideration exclusively to the contents of the Complaint, and as to the latter, the Court considered the materials contained in the record.

contractor discovered extensive water damage to various areas of the floor structure. Compl. [1-1] ¶ 12; Martin Aff. [20-4] ¶ 5.

On July 1, 2015, Martin made a claim with her Shelter insurance agent, W. Gregory Atwood, who allegedly "told her not to worry about it because it was 'covered.'" Compl. [1-1] ¶¶ 13–14. Atwood based this statement on his own experience with a water-damage claim on his own house, which Shelter had covered. *Id.* ¶ 14.

The next morning, July 2, Shelter inspected Martin's home to determine whether the claim would be covered and discovered a second leak near the hall bathroom that was added to the claim. Compl. [1-1] ¶¶ 17–18; Haines Decl. [30-2] at 1. That leak was also immediately repaired. Compl. [1-1] ¶ 18. More significantly, the adjuster "observed long-term water damage consisting of rusted water pipes near the leaks, rotten floor joist and subfloor extending from the area of the leaks, and a large amount of mold near the leaks and extending from the area of the leaks." Haines Decl. [30-2] at 1. Based on the extent of the damage, he determined that the leaks were present and continuously leaking for more than fourteen days and that the damage was caused by rot, mold, deterioration, and the lack of a moisture barrier. *Id.* at 2. As a result, the adjuster immediately told Martin that the claim would not be covered and that he would follow up with a denial letter. *Id.*; Compl. [1-1] ¶ 19.

On July 7, 2015, Shelter sent the letter ("Denial Letter"), but Martin did not receive it until July 11, 2015, because she had vacated the home. Compl. [1-1] ¶ 24. The letter listed several exclusions in the Policy that precluded Shelter from covering the damage. Compl. [1-1] ¶¶ 24–27; Denial Letter [20-2]. Specifically, the letter cited the following provisions:

>EXCLUSIONS APPLICABLE TO COVERAGES A & B
>We do not cover any loss or damage if it would not have occurred in the absence of any event or condition listed below.
>
>\*\*\*
>
>9. Wear and tear; deterioration; mold; mildew; fungus; spores; wet or dry rot;
>
>\*\*\*
>
>10. Continuous or repeated seepage or leakage of water or steam over a period of 14 days or more.
>
>\*\*\*
>
>18. Any defect, inadequacy, fault, unsoundness, or weakness in:
>(a) Material used for construction repair;
>(c) Workmanship

Compl. [1-1] ¶ 27; Denial Letter [20-2].

Aggrieved by the denial of her claim and Atwood's alleged misrepresentation that coverage existed, Martin filed suit against Shelter and the Atwood Agency on August 11, 2015, in the County Court of Hinds County, Mississippi. Her Complaint stated six causes of action against Shelter, including claims for: (1) declaratory judgment; (2) breach of contract; (3) waiver and estoppel; (4) vicarious liability for the acts of Shelter's agent, the Atwood Agency; (5) breach of the duty of good faith and fair dealing; and (6) bad faith. She also stated three causes of action against the Atwood Agency: (1) agency liability; (2) negligent misrepresentation; and (3) negligence.

Shelter subsequently removed the action to this Court on September 16, 2015. After removal, Martin voluntarily dismissed all claims against the Atwood Agency pursuant to Federal Rule of Civil Procedure 41(a)(1)(A). Shelter now seeks an order dismissing all remaining claims other than those for declaratory judgment and breach of contract. *See* Def.'s Mot. [7]. For her part, Martin moves for partial summary judgment as to the declaratory-judgment and breach-of-contract claims. *See* Pl.'s Mot. [20]. Finally, as a result of newly discovered evidence, Shelter moves for leave to file a surrebbutal to Martin's summary-judgment motion. *See* Def.'s Mot.

[39]. The motions are fully briefed, personal and subject-matter jurisdiction exist, and the Court is prepared to rule.

II.     Analysis

   A.     Shelter's Partial Motion to Dismiss

Shelter moves to dismiss four of Martin's claims under Federal Rule of Civil Procedure 12(b)(6). These include Martin's claims for: (1) waiver and estoppel; (2) vicarious liability; (3) breach of the duty of good faith and fair dealing; and (4) bad faith. The Court will address each in turn after addressing the applicable standard.

   1.     Standard

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citation and footnote omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to

relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements."  *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

> 2. Claims
>> a. Waiver and Estoppel

In the Complaint, Martin avers that Shelter "waived its policy defenses due to its agent's assertions that Martin's claim for insurance coverage was covered, and Shelter is therefore estopped from asserting [those defenses]."  Compl. [1-1] ¶ 41.  Shelter argues that this claim must be dismissed because, even assuming Atwood did make the statements in question, "waiver and estoppel cannot create coverage where coverage otherwise is excluded or does not exist."  Def.'s Mot. [7] at 5.

Indeed, under Mississippi law, which governs this diversity action,

> waiver or estoppel can have a field of operation only when the subject matter is within the terms of the policy . . . [but] cannot operate so as to bring within the coverage of the policy property, or a loss, or a risk, which by the terms of the policy is expressly excepted or otherwise excluded.

*Employers Fire Ins. Co. v. Speed*, 133 So. 2d 627, 629 (Miss. 1961).  Although an insurer may be estopped from insisting on forfeiture of a policy, "the coverage or restrictions on the coverage cannot be extended by the doctrines of waiver or estoppel."  *Id.*; *see also Stewart v. Gulf Guar. Life Ins. Co.*, 846 So. 2d 192, 202 (Miss. 2002) ("Mississippi law is clear that the doctrines of waiver and estoppel may not operate to create coverage or expand existing coverage to risks which, by the terms of the policy, are expressly excluded.").

Martin never directly addresses this authority.  Instead, she argues that "Shelter's Motion merely incorporates some exclusionary language that was cited in the Denial Letter [without] explain[ing] how it operates to 'expressly exclude' the claim from coverage under the Policy." Pl.'s Resp. [12] at 9.  She then argues that water damage is not excluded and that the Policy covers "accidental direct physical loss [to her residence] except for those perils and losses excluded under the heading 'Exclusions Applicable to Coverages A & B.'" *Id.* (citing Policy [20-1] at 7).

This argument is not convincing.  To begin, the policy language she cites states that coverage is subject to exclusions.  *Id.*  And the exclusions addressed in the Denial Letter (and in Shelter's memorandum) are plainly stated.  Yet Martin has not explained how her claim falls outside the black-letter law that "waiver and estoppel may not operate to create coverage or expand existing coverage to risks which, by the terms of the policy, are expressly excluded." *Stewart*, 846 So. 2d at 202.

Aside from this, Martin offers two additional arguments.  First, she contends that she has alleged facts "demonstrating a unilateral action on the part of the insurer not to raise known defenses to the claim." Pl.'s Mem. [13] at 5.  Specifically, she argues that Atwood, Shelter's agent, "unequivocally stated that the claim was 'covered,'" thereby relinquishing a known right to enforce the exclusions in her policy.  *Id.* at 6.

Martin premises this argument on *Pitts ex rel. Pitts v. American Security Life Insurance Co.*, where the Fifth Circuit held that the proper inquiry is to "focus on the unilateral action of the insurer in failing to raise at the outset a known defense to the claim," i.e., waiver. 931 F.2d 351, 357 (5th Cir. 1991).  But *Pitts* is readily distinguishable from this case and cases like *Speed*.

In *Pitts*, the insurer issued a group policy that gave it the right to terminate if the sponsor employed fewer than ten employees. 931 F.2d at 353. Though the insurer learned that the employer/sponsor falsely claimed to have more than ten employees, the insurer continued to accept premium payments and pay the claims of an insured worker. Significantly, there was no dispute in *Pitts* that the policy terms provided coverage for the type of claim the employee presented. *See id.* at 354. But when the insurer attempted to cancel the policy as being *void ab initio* due to the sponsor's misrepresentations, the Fifth Circuit concluded that the insurer waived that defense by accepting premiums and paying claims after discovering the misrepresentation. 931 F.2d at 357. *Pitts* did not—as is the case here—involve an effort to invoke waiver to bypass coverage exclusions—i.e., to create coverage for an event the policy never covered. *See Speed*, 133 So. 2d at 629.

Martin alternatively contends that there is a special rule under Mississippi law that allows an insurance agent's statements to modify an insurance contract upon a factual showing of reliance by the insured. Pl.'s Mem. [13] at 10 (citing *Am. States Ins. Co. v. Natchez Steam Laundry*, 131 F.3d 551, 555 (5th Cir. 1998) ("Nonetheless, an agent's oral representations, when relied upon, sometimes can modify an insurance contract.")). This reliance argument is also misplaced. For one, Martin's factual allegations do not indicate any detrimental reliance on Atwood's statements. Although she claims that she expected the damage to be covered based on his statements, she offers no factual averments in her Complaint showing that she relied on them to her detriment.[2]

---

[2] The reliance issue is examined in greater detail below, but the lack of reliance also precludes a prima facie case of estoppel.

Finally, even assuming the Complaint had stated sufficient facts to plausibly suggest reliance, the facts as alleged do not fall within the narrow confines of the exception Martin invokes. Martin bases her argument on a single sentence from *Natchez Steam Laundry*, which in turn relies on the Mississippi Supreme Court's decision in *Scott v. Transport Indemnity Co.*, 513 So. 2d 889 (Miss. 1987). In *Scott*, the court held that "statements and representations made by [the insurer's] agents *before or contemporaneous with entering into the insurance contract* may, if relied upon by [the insured], become binding." 513 So. 2d at 894 (emphasis added). Here, the statements in question were made well after Martin had entered into the insurance contract and did not induce her to purchase the policy. For these reasons, her averments with regard to Atwood's actions are insufficient to support a waiver or estoppel claim against Shelter. The waiver/estoppel claim is dismissed with prejudice.

       b.  Vicarious-Liability Claim

Martin also alleges that Shelter is "vicariously liable for Atwood Agency's acts and/or omissions in relation to Martin's claim for insurance coverage, including but not limited to Atwood Agency's unequivocal statement that the claim was covered." Compl. [1-1] ¶ 43. Although the Complaint fails to specify the underlying cause of action, the parties have both focused on the negligent-misrepresentation claim. *See* Def.'s Mot [7] at 6–7; Pl.'s Mem. [13] at 11–12.

Based on the doctrine of respondeat superior, a principal, or master, is vicariously liable for his agent's acts when they are taken "in the course of his employment and in furtherance of the master's business." *Children's Med. Grp., P.A. v. Phillips*, 940 So. 2d 931, 935 (Miss. 2006). Martin now points to two such acts. First, she states that Atwood told her on July 1,

2015, that the claim "was 'covered.'" Compl. [1-1] ¶ 14.  Second, Martin seems to argue that Shelter is vicariously liable for representations in an email Atwood sent after the adjustor told Martin the claim was not covered.  According to Martin, Atwood wrote that he had spoken with the claims supervisor "to see if there is any portion of the loss that could fall within being covered," and promised to get back to her when he heard something.  *Id.* at 8 (citing Compl. [1-1] ¶ 22).  That same day, the Denial Letter was sent.

To establish vicarious liability for these statements, Martin must first establish that they were negligent misrepresentations.  To do so, she must prove:

> (1) a misrepresentation or omission of fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance.

*Great Am. E & S Ins. Co. v. Quintairos, Prieto, Wood & Boyer, P.A.*, 100 So. 3d 420, 426 (Miss. 2012).  The first, fourth, and fifth elements are disputed.

Starting with the first element, Shelter believes Atwood's statements to Martin were opinions or promises of future conduct, rather than representations of past or present facts.  Indeed, Mississippi case law is clear that the first element "must concern a *fact* rather than an *opinion*."  *Spragins v. Sunburst Bank*, 605 So. 2d 777, 780 (Miss. 1992) (emphasis in original).  Likewise, "a promise of future conduct is, as a matter of law, not such a representation as will support recovery under a theory of negligent misrepresentation."  *Bank of Shaw v. Posey*, 573 So. 2d 1355, 1360 (Miss. 1990).

Because Atwood's email is both non-committal and promises future conduct, it cannot form the basis of a negligent-misrepresentation claim.  *Id.*  As for his initial comment that the

9

claim was covered, the Court will assume, without deciding, that it was a statement of fact, and turn to Shelter's alternative argument that Martin failed to sufficiently plead detrimental reliance.

Shelter is correct. Martin first asserts detrimental reliance based on the fact that her contractor was "contacted and informed that the loss would be covered as indicated by the Shelter agent" and then met Shelter's adjuster at Martin's house in order to formulate a remediation plan. Compl. [1-1] ¶ 16. According to Martin, this "indicates a change of position in reliance upon the agent's assertions [that the claim would be covered]." Pl.'s Mem. [13] at 7. But she has not alleged facts plausibly suggesting that any of that changed *her* position or damaged her in any way. Accordingly, Martin fails to plausibly alleged that she "suffered damages as a result of any negligent misrepresentation by the defendants." *Horace Mann Life Ins. Co. v. Nunaley*, 960 So. 2d 455, 462 (Miss. 2007) (reversing judgment for policy holder for lack of detrimental reliance). The call to the contractor is not sufficient.

Martin also argues that because she relied on Atwood's statements, "immediate remediation steps were not taken to address the damage." Pl.'s Mem. [13] at 7–8. It is conceivable that delayed remediation could, in some circumstances, constitute detrimental reliance. But this claim is neither pleaded in her Complaint nor reflected in its facts. Instead, the only reference to repairs avers that the two burst pipes were "immediately" repaired. Compl. [1-1] ¶¶ 11, 18.

Even assuming Martin actually pleaded this theory, she has not pleaded a plausible claim that reliance was reasonable or detrimental. By the time she called Atwood, the leaks had already been repaired. As for the water damage, any continued reliance on Atwood would be unreasonable after she was informed by the adjustor that the damage was not covered. This

occurred the morning after Atwood's initial statement, and Martin has not pleaded a plausible claim that the damage was exacerbated in the interim. Accordingly, Martin has not stated a plausible vicarious-liability claim based on Atwood's alleged negligent misrepresentation. This claim is dismissed with prejudice.

### c. Breach-of-Duty-of-Good-Faith/Bad-Faith Claims

Martin alleges that Shelter breached its duty of good faith and fair dealing by refusing to "treat Martin in the same manner in which it treats other insureds, and to honor representations of its agent that the claim for damages herein was covered." Compl. [1-1] ¶ 45. She also claims that Shelter acted in bad faith and is liable for punitive damages as a result of its "willful, wanton and reckless disregard of the rights of its insured." *Id.* ¶ 47. Shelter moves to dismiss these claims on the ground that Martin has not pleaded sufficient facts. *See* Def.'s Mot. [7] at 7–8.

Shelter's argument has punch because Plaintiff's factual averments leave something to be desired. That said, the "standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d at 587 (quoting *Twombly*, 550 U.S. at 556). And here, there are non-conclusory factual assertions related to the claim and claims handling. So, while Martin ultimately caries a heavy burden of proof on this issue, the motion to dismiss is denied without prejudice. The Court will determine whether the jury should hear this issue after the liability issues are resolved.[3]

---

[3]The Court does not base this ruling on Martin's argument that the motion is premature.

B.     Martin's Motion for Partial Summary Judgment

Martin seeks summary judgment as to the first two counts in her Complaint—for declaratory relief under Rule 57 of the Mississippi Rules of Civil Procedure and for breach of contract based on Shelter's decision to deny her insurance claim.[4] She contends that summary judgment is warranted because Shelter waived its exclusions and/or is incapable of proving them. Before considering the merits of these arguments, this Order will address the legal standards and Shelter's motion seeking leave to file a surreply.

1.     Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when the evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. When the party moving for summary judgment also bears the burden of proof on an issue, he

---

[4] "Rule 57(b) was amended in 2000 to authorize an injured party, where an insurer has indicated that it may deny coverage of the injured party's claim, to seek a declaratory judgment establishing coverage. The traditional rule in Mississippi barred any type of direct action by an injured party against an insurer, *Crum v. Mississippi Mun. Serv. Co., Inc.*, 1998 WL 378333 (N.D. Miss. 1998)." *Cherokee Ins. Co. v. Babin ex rel. Rogers*, No. 3:06cv00612-DPJ-JCS, 2007 WL 2381928, at *4 n.3 (S.D. Miss. Aug. 17, 2007) (citing Miss. R. Civ. P. 57 (cmt)).

"must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). Such movants face a "heavy burden." *Nicholas Acoustics & Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 844 (5th Cir. 1983).

If the moving party meets this burden, the non-moving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993) (per curiam). Under Rule 56(c)(3), "[t]he court need consider only the cited materials, but it may consider other materials in the record." But Rule 56 "does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013) (quoting *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006)) (internal quotation marks omitted).

2. Leave to File Surrebuttal

Shelter seeks leave to file a surrebuttal, or alternatively to supplement its Response, based on Martin's supplemental production of documents. Specifically, Shelter seeks to augment its argument in opposition to summary judgment with evidence from an April 2011 home-inspection report which Martin produced on February 18, 2016—more than one month after she filed the instant motion. *See* Def.'s Mot. [39] at 1.

As stated previously, Rule 56 allows for the entry of summary judgment "after *adequate* time for discovery." *Celotex*, 477 U.S. at 322 (emphasis added). Here, Martin filed her motion prior to the close of discovery but did not produce the home-inspection report until *after* Shelter had filed its Response. Shelter's request does not appear to be made in bad faith or due to lack of diligence, and there is no prejudice in allowing this newly discovered evidence to be offered in opposition to Martin's motion as it merely adds weight to the ultimate rulings. Under these circumstances, the Court finds that it would be inequitable to deny Shelter the opportunity to supplement its Response with the newly produced evidence. The Motion for Leave is therefore granted.[5]

---

[5] Contrary to Martin's assertion, Shelter is not required to seek leave under Rule 56(d) for additional discovery because the home-inspection report is already part of the record, having been produced in response to Shelter's initial request for production. Moreover, if any party is at fault for Shelter's inability to "present facts essential to justify its opposition," *see* Fed. R. Civ. P. 56(d), it is Martin, who failed to produce the requested documents until after Shelter's response deadline.

3. Analysis

a. Waiver

Martin first argues that Shelter waived the right to assert any policy defenses by failing to specifically plead any exclusions as affirmative defenses in its Answer. Pl.'s Mem. [21] at 1, 6. Assuming Martin's insurance policy included "all-risk" or "open-peril" coverage—which Shelter does not dispute—the insured has the burden of proving only a right to recover, while "the insurer bears the burden of proving that a particular peril falls within a policy exclusion, and must plead and prove the applicability of an exclusion as an affirmative defense." *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 625–26 (5th Cir. 2008) (quoting *Tuepker v. State Farm Fire & Cas. Co.*, 507 F.3d 346, 356–57 (5th Cir. 2007)) (internal quotation marks omitted); *see also Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 618 (Miss. 2009) (noting that under an all-risk policy, the insured must prove that a loss occurred, at which point the burden shifts to the insurer to prove the exclusion as an affirmative defense).

Here, the record evidence demonstrates that Martin suffered a loss during the policy period. *See, e.g.*, Denial Letter [20-2]; Haines Decl. [30-2]. The burden thus rests with Shelter to plead and prove an exclusion, which it attempted to accomplish in its Seventh Defense: "The Plaintiff's claims are barred, in whole or in part, by exclusions in the policy, and the damages (and/or causes thereof) for which the Plaintiff seeks to recover policy benefits for are excluded by the policy." Answer [2] at 8.

Martin contends that this is not sufficiently specific and therefore constitutes waiver. But the cases she cites address burden of proof, not waiver under Rule 8(c). In the waiver context, the Fifth Circuit has repeatedly held, "Where the matter is raised in the trial court in a manner

that does not result in unfair surprise, [ ] technical failure to comply precisely with Rule 8(c) is not fatal." *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855–56 (5th Cir. 1983). "Rather, this court examines the overall context of the litigation" and whether evidence of prejudice exists. *Soto v. Ortiz*, 526 F. App'x 370, 373 (5th Cir. 2013).

In this case, Shelter's answer does not specify which particular exclusions apply, but the Denial Letter clearly does and is attached to the Complaint. Moreover, Shelter stated in response to a request for admission that it "admits the Denial Letter accurately states the reason Shelter denied the claim." Pl.'s Mot., Ex. 3 [20-3] at 3. Finally, the parties have vigorously disputed the same exclusions. So even assuming the answer was not sufficiently specific, Shelter raised the issue at a pragmatically sufficient time and in a manner that avoids prejudice. *See, e.g.*, *Standard Waste Sys. Ltd. v. Mid-Continent Cas. Co.*, 612 F.3d 394, 398–99 (5th Cir. 2010) (finding no waiver where, among other things, the insurer expressly stated the exclusion in its denial letters and the parties actively litigated its applicability); *Estate of Thompson v. Sun Life Assur. Co. of Can.*, 354 F. App'x 183, 188 (5th Cir. 2009) (finding no prejudice where claimant "was first put on notice of the exclusion's applicability at the time of the initial benefit denial").

   b.  Merits

Substantively, Martin contends that: (1) she is entitled to declaratory judgment that the Policy "contains 'all-risk' coverage for property damage"; (2) she is entitled to declaratory judgment that a "loss" has occurred so Shelter carries the burden of proving any Policy exclusions; and (3) Shelter has failed to meet that burden. Pl.'s Mem. [21] at 5–8.

To begin, it is not clear that the two statements for which Martin seeks declaratory judgment were necessarily pleaded as such in Count I of her Complaint. While the Court will

16

therefore deny this portion of the motion, it notes that Shelter has never disputed that it holds the burden of establishing the existence of an exclusion.

As for the exclusions, Martin directly addresses each in her memorandum, but her legal arguments all gravitate to the same factual question—whether the loss was caused suddenly by a burst pipe or by more gradual leakage. Martin clings to the former, contending that Shelter's Denial Letter admitted that its "investigation revealed that there was a *burst* water line at the kitchen sink." Denial Letter [20-2] at 1 (emphasis added). Equating "burst" with a "sudden" event, Martin posits that "[t]he act causing the property damage, as described in Shelter's own Denial Letter, is not slow or gradual; rather, it is sudden and violent." Pl.'s Mem. [21] at 10. And she concludes by arguing that there is "absolutely no evidence" to the contrary. Pl.'s Mem. [21] at 15.

True enough, Shelter's Denial Letter describes finding "a burst water pipe." Denial Letter [20-2] at 1. But that does not mean, as Martin contends, that Shelter therein admitted that the water damage was caused by a sudden event. As a factual matter, a sudden burst of water from the pipes does not eliminate the possibility that Martin's pipes had been leaking for some time. More specifically, even if they ultimately failed in a more dramatic way, the water damage—and even the burst pipe—may have been caused by wear and tear, deterioration of the pipes, mold, mildew, fungus, spores, wet and dry rot (Exclusion 9); by seepage or leakage existing for more than 14 days (Exclusion 10); or by issues with the materials and workmanship (Exclusion 18). *See* Policy [20-1] at 13–14.

For its part, Shelter maintains that the description of a "burst water line" in its Denial Letter was never intended to suggest a single sudden failure. Shelter backs that argument with a

17

declaration from Earl Haines, its adjuster and the author of the letter, who states that he "referenced the leaks as a 'burst water line' because that is what [Martin] told [him] happened." Haines Decl. [30-2] at 2.

Martin dismisses Haines's declaration as self-serving, but it does not stand alone. Indeed, the same Denial Letter also states that "the two water leaks have occurred over a period greater than fourteen days." Denial Letter [20-2] at 2. And if that was not clear enough, the letter mentions "long-term water damage consisting of rusted water pipes near the leaks, rotten floor joist and subfloor . . . , and a large amount of mold." *Id.* at 1. Based on this, and approximately twenty years of experience handling property-damage claims, Haines concluded the Denial Letter by stating that "the leaks were present and continuously or repeatedly leaking for over 14 days" prior to his inspection. *Id.*

Haines's conclusions also find support in the record evidence. First, the photographs of the damage are fairly dramatic. At a minimum, they are sufficient for a reasonable jury to conclude that the rot, mold, rusty pipes, and wide-spread deterioration did not occur in the short time between discovering the leak and Haines's inspection. Second, a home-inspection conducted in 2011 reported "evidence of leaks in the crawl space plumbing drains beneath the hall bath room and kitchen." Inspection Report [39-1] at 27–28. Finally, the record shows that Martin referenced the damage as a "leak" in an email after submitting the claim to Shelter. *See* Martin Email [30-3].

The Court cannot weigh the evidence under Rule 56, and Martin has not offered record evidence capable of rebutting these facts as a matter of law. She instead returns in reply to the one line from the Denial Letter describing a "burst water line." Denial Letter [20-2] at 1.

Viewing the record as a whole, a genuine factual issue exists as to whether the water damage in Martin's home was caused suddenly by a burst pipe or by a more gradual condition that might trigger Exclusions 9 (wear and tear), 10 (leakage and seepage for more than 14 days), and/or 18 (faulty materials or workmanship related to the absence of a moisture barrier).  Accordingly, the motion is denied.[6]

IV.     Conclusion

The Court has considered the parties' arguments.  Those not specifically addressed would not have changed the outcome.  For the foregoing reasons, the Court finds that Shelter's Partial Motion to Dismiss [7] is granted except as to Counts V and VI.  Its Motion for Leave to File Surrebuttal [39] is granted.  Martin's Motion for Partial Summary Judgment [20] is denied.  As such, Martin's claims for waiver and estoppel and for vicarious liability are dismissed with prejudice.  The remaining claims will proceed.

**SO ORDERED AND ADJUDGED** this the 1st day of July, 2016.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[6] Martin makes other contract-based arguments.  Most turn on this same factual issue.  But she also relies on the conclusory assertion that the exclusions are barred by the "Drainage System Endorsement," which covered accidental losses that "directly result from the failure of a drainage system."  Policy [20-1] at 26.  The endorsement refers specifically to ground or surface water, pumps for collecting and removing water from the premises, and overflow from external bodies of water, *see id.*, and thus does not appear to be directly applicable to the type of damage at issue in this case.  In any event, this would be a factual question.